Allen, J.
 

 The plaintiff alleges in his complaint the receipt from the defendant, or Ms agents in Hew York, of a quantity of railroad iron to be carried and delivered to the defendant at Buffalo, and that for the carriage and delivery of the same at Buffalo, the defendant by his agent agreed to pay a specified price per ton over and above canal tolls, a part of wMch was received by the plaintiff of the defendant or his agent in Hew York, and claims to receive the balance of the freight earned, and damages for the unreasonable detention of the boat in unloading.
 

 The plaintiff, who was both master and owner of the canal boat upon wMch the iron was sMpped, signed as master two bills of lading, acknowledging the shipping of the property in good order by H. H. Holt at Hew York, “to be delivered at the port of Buffalo; freight at ten dollars per gross ton over tolls and over unloading,” and appended to the bills were receipts signed by the plaintiff for $412.52 from H. H. Holt, advances on account of freight and toll hereon which consignee will pay him or order.”
 

 The only address or consignment of the property was on the margin of the bills of lading, and on that retained by the plaintiff was “ Care Charles Ensign, Buffalo, H. Y.,” and in the duplicate bill which was sent to the defendant by mail, and upon which he received the iron, it was “ Care Chas. Ensign, Buffalo, H. Y. For J. F. Fox, care Chicago, Burlington and Quincy R. R., Chicago, Ills. Deliver at their dock.”
 

 The referee, by whom this cause was tried, found that the . ultimate destination of the cargo was Chicago, Illinois; that the defendant, to whose care the same was consigned at Buffalo, was an intermediate consignee, having no interest in the
 
 *621
 
 property, and that the same was consigned to his care for the sole purpose of receiving and reshipping the same at Buffalo; and that the plaintiff delivered the iron to the defendant, making no claim for back freight; and that the defendant received the same without any notice from the plaintiff that any claim or lien existed on his part.
 

 The contract for the transportation of the goods was made by the plaintiff with Hall at the city of Hew York, and the bills of lading, signed by the plaintiff, and the contents of which must be assumed to have been known" to him, clearly show- that Holt did not act as the agent of the defendant, and that the latter was not the owner of the property. His relation to the merchandise, and his agency and duties on the receipt and subsequent disposal of it, were plainly indicated by the address and direction on the margin of the shipping bills, and Holt acted either as principal or as agent of the ultimate consignee, Fox; and the legal presumption, until the contrary is shown, is that he acted as agent of the consignee, as the presumptive owner of the goods.
 

 The defendant was but an intermediate agent of the owner between the points of shipment and final destination of the goods, to receive them from the plaintiff at the terminus of his employment, and forward them to their last address or ultimate destination.
 

 The contract for the payment of freight made in Hew York was not then the contract of the defendant, and the allegation of the complaint that such contract and promise was made by the defendant, through and by his agent, was not proved.
 

 The agreement to pay freight did not purport to have been made by or on behalf of the defendant, and no agency was shown in Holt to act for the defendant in that behalf; nor was any property in the iron shown in the defendant from which any agency can be inferred.
 

 It was not claimed upon the trial that the defendant expressly assumed to pay the freight upon the delivery of the goods at Buffalo, or at any time. On the contrary, the referee finds that
 
 *622
 
 no claim was made upon Mm by the plaintiff, or notice given of any claim or lien in favor of the latter. If the plaintiff had a lien on the goods, he might have asserted it and insisted on payment or an express promise to pay freight as a condition precedent to a delivery. But he did not claim a lien or exact payment or a promise to pay from the defendant.
 

 The claim to recover in the absence of an express promise or the finding of a promise by the referee as an inference of fact from the evidence and the circumstances of the case, rests upon the legal import of the contract of affreightment, as evidenced by the bills of lading.
 

 If a promise on the part of the defendant to pay the freight results by legal implication upon the receipt of the property, the plaintiff may sustain his action; otherwise, not. Had the defendant been the owner of the goods and received them as such, a promise to pay the charges upon them for transportation, might arise by implication. But receiving them as agent, any implied promise would only be as agent and would not bind him personally, but would be obligatory upon the principal. In other words, it would be the promise of the principal.
 
 (Amos
 
 v. Temperley, 8 M. & W., 798.)
 

 The receipt of the goods by the agent, as agent, under a bill of lading of the character of that signed by the plaintiff, would not be evidence of a new contract between defendant and the plaintiff to pay the freight, or that credit was given to the defendant for the freight. If the ease shows that the consignee of goods at the time he received them acted only as agent of a tMrd party, and the carrier must have known that he so acted, the consignee is not personally liable for the freight, although he does not notify the carrier that he is acting as agent.
 
 (Boston and Marne Railroad
 
 v.
 
 Whitcher,
 
 1 Allen, 497.) Agents have been held personally liable to pay freight upon goods consigned to them, on the ground that by the terms of the bills of lading as usually drawn, the consignee is to pay the freight.
 

 The ordinary contract of the carrier is to deliver the goods to the consignee or his assigneés, “ he or they paying freight
 
 *623
 
 for the same.” Whoever accepts a delivery under such a bill of lading, contracts by implication to pay the freight chargeable upon the property. This would be the rule when the name of the agent only is inserted in the bill, without any designation of the character or capacity as agent for another, and it is not necessary to consider the question whether a consignee described in the bills as agent would or would not be deemed by the receipt of the goods to have come under a personal engagement to pay the freight.
 

 But in the absence of a stipulation in the contract of transportation, by which the consignee is to pay the freight, an agent is not liable for the freight of goods sent to and received by him when the agency is known to the carrier at the time of the delivery of the goods.
 

 Even the owner of goods, by indorsement of the bill of lading, does not, under all circumstances, become liable to pay freight by necessary implication.
 

 In
 
 Sanders
 
 v.
 
 Van Zeller
 
 (4 A.
 
 &
 
 E. N., p. 260), the Exchequer Chamber, in affirming the judgment of the Queen’s Bench, held that in the case of an indorsee of a bill of lading which specified that the goods were to be delivered to the consignee or his assigns, he or they paying a specified sum for freight, receiving the goods by virtue of the bill, no promise to pay the freight would be implied by law, though the jury would be warranted in finding such a contract; and under the practice it was said there would be little or no doubt that the jury would on such a question have found in favor of the shipowner. The mere receipt of goods as consignee under a bill of lading does not make the payment of freight a condition of the delivery; does not alone and without other evidence authorize the presumption of a promise to pay the freight.
 
 (Davis
 
 v.
 
 Pattison,
 
 24 N. Y., 317;
 
 Amos
 
 v. Temperley,
 
 supra.)
 
 Judge Parsons states the rule thus: “ The mere receipt of goods by one actually the owner of them might lay him under an obligation to pay for bringing them, but not the receipt by one who is not owner, unless he receives them under an authority conditioned to pay the
 
 *624
 
 freight.” (1 Parsons on Maritime Law, 220.) ■ In
 
 Hinsdell
 
 v.
 
 Weed
 
 (5 Den., 172) the order and direction of the consignor to the consignee, accompanying and making a part of the bill of lading, was regarded as a virtual direction by the bill to deliver the flour to the consignee, he paying the freight, and a contract to pay by the consignee was implied from the receipt of the flour within the established principle governing-like cases. (And see
 
 Coleman
 
 v. Lambert, 5 M.
 
 &
 
 W., 502;
 
 Scaife
 
 v. Tobin, 3 B. & Ad., 523;
 
 Merian,
 
 v. Funck, 4 Den., 110;
 
 Moorsom
 
 v.
 
 Kymer,
 
 2 M. & S., 303.) The bare receipt of the goods by the defendant as agent for the owner in the course of their transit, and for a special purpose, by virtue of a bill of lading which did not impose the payment of the freight as a condition of the receipt, did not, in the absence of other evidence, raise an implied assumpsit to pay the freight. There was no forbearance on the one side or security given or promise made on the other, and there had been no previous dealing
 
 from which an inference or
 
 presumption could arise that the defendant undertook to pay the freight. The law does not imply a contract by the consignee under such circumstances, and the referee has found none.
 

 The order granting a new trial must be reversed and judgment on the report of the referee affirmed.
 

 Church, Oh. J., Peokham and Rapallo, JJ., concur. Gboveb and Folqeb, JJ., dissent.
 

 Judgment accordingly.