63397. TRAX, INC. v. PENTAGON AERO-MARINE
CORPORATION et al.

QUILLIAN, Chief Judge.

This is an attachment action. Plaintiff, Trax, Inc., advertised in its business literature for inquiries from persons interested in purchasing two Caterpillar D-9 tractors. The two tractors were owned by the Birmingham Trust National Bank of Birmingham, Alabama. Pentagon Aero-Marine Corporation, of Miami, Florida, a customer of Trax, received the advertisement and made inquiry of Trax through Gloria Backus — wife of Pentagon's owner. Trax paid for air transportation to Atlanta for Backus and the potential customer of Pentagon — a South American buyer named Savalia who was agent for the Coroco Company of Peru. Trax sent an agent with Backus and Savalia to Birmingham to see the D-9 tractors. Shortly thereafter the Birmingham Trust Bank advised Trax that Savalia was back with a man named Dollarhyde, inquiring about the purchase of the two D-9 tractors. Dollarhyde is the secretary-treasurer of Macon Aircraft Center, Inc., (Macon), of Macon, Georgia. Trax phoned Pentagon and advised them that Trax had

a contract with Birmingham Trust Bank for the purchase of the tractors and insisted that Trax had a contract of sale with Pentagon for the same two tractors. Both the Bank and Pentagon denied there was a contract with Trax.

On August 14, 1980, Birmingham Trust acknowledged receipt of $20,000 from Macon toward purchase of "two Cat D-9H tractors SN 90V5000 SN 90V4547." On August 26, 1980, Birmingham Trust executed two Bills of Sale to Macon in the amount of $88,750 each for "Cat model D9H crawler tractor s/n 90V5000 and . . . 90V4547 . . ." Macon introduced invoices showing it paid Thompson Tractor Company of Birmingham, Alabama, $35,273.34 and $14,469.46 for work on tractors "09OVO5000" and "09OVO4547." (These figures are not completely legible on the exhibits). Macon also introduced in evidence a letter to Coroco in which it offered for sale two D9H Caterpillar tractors, SN "9V5000" and "90V4547." In a return letter, Coroco accepted Macon's offer for the sale of tractors "9V5000" and "90V4547" for the sum of $260,000. Macon produced a Bill of Lading from a carrier, Home Transportation Co., Inc., for a D9 tractor, listing Macon Corporate Aircraft as shipper and consignment to Holland Pan American Line at Newport Marine Terminal, Newport News, Virginia. When this interstate shipment passed through Marietta, Georgia, Trax posted a $70,000 bond and attached D-9 Caterpillar tractor 90V5000. Macon intervened, posted a replevy bond and claimed title. The trial court entered an order vacating the attachment. Trax brings this appeal. *Held:*

1. Macon has moved to dismiss the appeal on the ground that this is not a final judgment as the order reserved the right to determine at a later date whether claims by the defendant and the intervenor could be asserted against the plaintiff's bond. This is a multi-party suit, and the trial court added the language from Code Ann. § 81A-154 (b) (CPA § 54 (b); Ga. L. 1966, pp. 609, 658; 1976, pp. 1047, 1049) which makes this a final judgment — i.e. "there being no just reason for delay and no reason why judgment should not enter on said claim, said judgment is final . . ." This is an appealable order. *Robinson v. Franwylie,* 145 Ga. App. 507, 510 (244 SE2d 73); 6 Moore's Federal Practice 163, § 54.04[3.-10]; 6 (Part 2) Moore's Federal Practice 56-1203, 1204, § 56.20 [1].

2. Trax enumerates three allegations of error: (a) the trial court expanded the scope of the attachment hearing to make a determination of the merits of plaintiff's demands against the defendant and the claim of the intervenor, and (b) a defendant in attachment who denies an interest in the attached property has no standing to contest issues raised by attachment, and (c) the trial court erred in revoking the attachment where the evidence

established the actions of the defendant and the intervenor presented a question of fraud and deceit by them against the plaintiff.

(a) The trial court stated at the outset that "the court is sitting as a finder of fact in a judgmental setting . . . finding who has by a preponderance of the evidence entitled themselves to prevail on *the merits of the attachment;* not the declaration, but the attachment." (Emphasis supplied.) The court concluded with the statement: "So I find as a fact that there is a failure of evidence that the Defendant has an attachable interest in the property. I therefore find that the Plaintiff has failed to prove the grounds for issuance of the attachment. The plaintiff has failed to carry its burden, and the order authorizing the attachment . . . is revoked." These statements make it clear the court did not rule on the merits of the parties' claims but on the merits of the attachment. Although, in arriving at his decision, the court discussed issues that can only be decided by the jury on the main trial, such facts related to the attachment and no finding was made on the merits of plaintiff's petition which are for jury resolution. *Irwin v. Griffin,* 202 Ga. 456 (43 SE2d 687); 2 EGL 291, Attachment, § 14.

(b) The defendant traversed plaintiff's affidavit of attachment in its answer and denied the property levied upon was the property of the defendant. Plaintiff contends that where a defendant denies an attachable interest in the property it has no standing to traverse the attachment affidavit. We need not reach this issue as the claimant-intervenor — Macon, traversed plaintiff's affidavit of attachment in its answer when it alleged it was the "bona fide purchaser for value of the personal property levied upon" which was not subject to attachment. We find Macon's traverse raised the same issue and placed the same burden upon the plaintiff to prove the grounds for attachment. The statute involved provides that after attachment issues "against the property of the defendant, such defendant may at any time traverse the plaintiff's affidavit . . . Upon filing of such traverse, the court shall issue a show cause order to the plaintiff requiring him to appear at a time certain, not to be more than ten days from the filing of the traverse, to prove the grounds for the issuance of the attachment. If the plaintiff shall fail to carry the burden of proof, the order authorizing the attachment shall be revoked." Code Ann. § 8-114.1 (Ga. L. 1980, pp. 1065, 1070). Our statutes also permit a claimant who alleges he is the true owner to intervene. See Code Ann. § 8-801 (Code § 8-801). These sections must be considered in pari materia as each deals with title to property the subject of plaintiff's affidavit of attachment.

The United States Supreme Court held, in Sniadach v. Family

Finance Corp., 395 U. S. 337 (89 SC 1820, 23 LE2d 349) — a prejudgment seizure of wages, that "the sole question is whether there has been a taking of property without that procedural due process that is required by the Fourteenth Amendment [Id. at 339] ... Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing [Cit.] this prejudgment garnishment procedure violates the fundamental principles of due process." Id. at 342. In the present prejudgment attachment there was no notice to Macon, and no prior hearing concerning the extent of its interest in the attached property. In North Ga. Finishing v. Di-Chem, 419 U. S. 601 (95 SC 719, 42 LE2d 751), the Supreme Court held that Georgia statutes permitting a writ of garnishment to be issued by an officer authorized to issue an attachment, or a court clerk in a pending suit, on an affidavit of the plaintiff or his attorney, which makes no provision for an early hearing, violates the due process clause of the Fourteenth Amendment.

Present Georgia statutes permit the true claimant of the attached property to intervene and traverse plaintiff's affidavit of attachment. Macon was permitted to intervene in the present case and traversed plaintiff's affidavit, alleging it was the true owner of the attached property. Construing Code Ann. §§ 8-114.1 and 8-801 in pari materia, in light of the due process requirements of Sniadach and North Georgia Finishing, supra, we construe that the intervenor has the same right to traverse plaintiff's affidavit of attachment as the defendant and once the affidavit of attachment is traversed the procedure to follow is the same as that accorded the defendant. If we did not follow this procedure, a true owner of prejudgment attached property would be denied the due process right for an "early hearing."

We will note in passing that although Code Ann. § 8-802 (Code § 8-802) provides that the claim of the intervenor shall be tried in the same manner and subject to the same rules and regulations as are prescribed by law for the trial of other claims — this section can be construed to relate only to the claim of the intervenor against the plaintiff for damages for wrongful attachment — or it can also be interpreted as stated above — that the intervenor's traverse claim will be tried in the same manner as the defendant's traverse — otherwise intervenor's claim to the attached property would not be accorded due process rights to an "early hearing." Compare: *Bank of Manchester v. Universal Credit Co.,* 45 Ga. App. 233 (164 SE 95); *Horne v. Powell,* 88 Ga. 637 (15 SE 688); *New England Mortgage &c. Co. v. Watson,* 99 Ga. 733, 735 (2) (27 SE 160); *Ansley Co. v. O'Byrne,* 120 Ga. 618 (48 SE 228); *Haynes v. Armour Fertilizer Works,* 146 Ga.

832, 835 (92 SE 648).

Thus, we hold that the plaintiff's affidavit of attachment was properly traversed and placed in issue at the hearing. Once traversed the plaintiff has the burden of establishing "grounds for issuance of the attachment." Code Ann. § 8-114.1. Under Code Ann. § 8-101 (Code § 8-101) there are six grounds for attachment, but only number six is at issue here: "6. When the debtor is causing his property to be removed beyond the limits of the State." Trax argues the trial court erroneously required it to prove the defendant was "a debtor" and had an "attachable interest" in the property seized. He contends that by having to prove the defendant was "a debtor" this adjudicated his petition's main issue that should have been decided by a jury.

We find the court correctly concluded that the sixth ground of Code Ann. § 8-101 required a showing that the defendant "is causing *his property*" (emphasis supplied) to be removed, which places the burden upon the plaintiff to show the alleged debtor was removing "*his* property." Our Code specifically provides that "[i]t shall be the duty of any one of the officers to whom an attachment may be directed to levy the same upon the property of the defendant." Code Ann. § 8-201 (Code § 8-201). This should be the primary consideration, for if the plaintiff prevails in the principal action and execution issues — satisfaction for a judgment against a defendant should be levied upon "his property." If the property attached was not "his property" the entire procedure is fruitless. If we were to adopt the procedure that there is no requirement for plaintiff to show an attachable interest in the property seized, a plaintiff in attachment would only have to show defendant was indebted to him and he could attach any property of a third party which was about to be removed from the state. Under that procedure a proper third party owner of prejudgment attached property would be denied an "early hearing" under Sniadach and North Georgia Finishing, supra, and would have to wait until the main trial to recover his property. See Mathews v. Eldridge, 424 U. S. 319, 333-334 (96 SC 893, 47 LE2d 18).

We need not reach the remaining issue of whether the judge improperly expanded the scope of the attachment hearing to require plaintiff to prove the defendant was "a debtor," because pretermitting whether defendant was or was not a debtor, failure of plaintiff to prove defendant had an attachable interest in the seized property was fatal to the attachment. The trial court found there was "a failure of evidence that the Defendant had an attachable interest in the seized property was fatal to the attachment." On appeal, where the trial court finds the facts, this court will not reverse unless such findings are clearly erroneous. Code Ann. § 81A-152 (CPA § 52 (a); Ga. L. 1969, pp. 645, 646; 1970, pp. 170, 171). The findings are

supported by the evidence and are not clearly erroneous.

(c) Our holding in subsection (b) above controls the result we must reach as to the last enumerated error. However, even if it did not, the trial court found there was a failure of the plaintiff to carry its burden of proof to show fraud and deceit between Pentagon and Macon. The court saw and heard the witnesses and weighed the evidence. There is evidence to support the court's findings and we do not find them clearly erroneous. This enumeration of error is without merit.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED APRIL 9, 1982—<br>REHEARING DENIED MAY 6, 1982—

*Gregory W. Sturgeon, Furman Smith, Jr.,* for appellant.
*William D. Hargrove, Arthur B. Seymour,* for appellees.